| Minute Order Form (06/97) | | | | |
|---|---|---|---|---|
| **United States District Court, Northern District of Illinois** | | | | |
| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | | |
| CASE NUMBER | 03 C 4393 | DATE | 5/12/2004 | |
| CASE TITLE | CORRINDA SPAULDING vs. JO ANNE B. BARNHART | | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's motion for summary judgment is denied and plaintiff's motion is granted. The case is remanded to the Social Security Administration for further proceedings.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 13 2004 | |
| | Notified counsel by telephone. | | date docketed | 21 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CORRINDA SPAULDING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 03 C 4393 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
MAY 1 3 2004

## MEMORANDUM OPINION AND ORDER

After moving up to the Seventh Circuit Court of Appeals and back down to the Social Security Administration (SSA), Corrinda Spaulding's action seeking Social Security disability insurance benefits is once again before this court. Plaintiff's claim for benefits was first denied by the SSA over seven years ago. After a requested hearing, Administrative Law Judge James Horn (ALJ Horn) issued a decision on June 26, 1998, finding that plaintiff was not disabled under the Social Security Act. The Appeals Council denied review of the ALJ's decision, and plaintiff filed a complaint in federal court, requesting review under 42 U.S.C. § 405(g). This court affirmed the decision of the ALJ in August 2000. Seven months later the Seventh Circuit Court of Appeals reversed the decision, stating that the ALJ's determination was based on factual errors, failures to pursue lines of evidence, and inadequate analysis to support the conclusion. The case was remanded to the SSA, where the Appeals Council vacated the previous decision and ordered the ALJ to conduct further proceedings. Plaintiff, a medical expert, and a vocational expert testified at a supplemental hearing. On April 25, 2003, ALJ Horn issued a second decision, in which he once again found that plaintiff was not disabled. The Appeals Council did not take jurisdiction of the case and so plaintiff sought judicial

review of the ALJ's decision. Now, both plaintiff and defendant, Jo Anne Barnhart, Commissioner of Social Security, have filed motions for summary judgment on plaintiff's claim for benefits.

## BACKGROUND

Corrinda Spaulding has a long history of stomach-related medical problems. On September 11, 1996, she applied for disability benefits. She alleged that December 16, 1993, marked the onset of her disability. To be eligible for disability benefits plaintiff needed to prove that she was disabled before December 31, 1998, the date after which she was no longer insured under the special earnings requirement of Title II of the Social Security Act. *See* 42 U.S.C. § 423(c).

Plaintiff's medical records and the testimony from her hearings establish the history of her illness. In 1988, at the age of 21, plaintiff met with Dr. Michael Colligan after stomach pains forced her to the emergency room. Dr. Colligan reported that plaintiff had a two-year history of burning epigastric pain and nausea, which was symptomatic of hyperacidity. She also experienced bouts of alternating constipation and diarrhea. Dr. Colligan's tests of her upper gastrointestinal tract evidenced duodenitis, with possible erosions. He prescribed medication and set a follow-up by phone.

Plaintiff did not return to see Dr. Colligan until 1992. Though her treatments initially improved her condition, she reported that once again she suffered from recurrent nausea, vomiting, and irregular bowel movements. She had also gained 50 to 60 pounds. Dr. Colligan diagnosed a combination of irritable bowel syndrome and gastroparesis, and prescribed Zantac and Reglan. Though the medication alleviated some of her symptoms, plaintiff

experienced flare-ups. In July 1992, Dr. Colligan wrote that plaintiff's nausea and dry heaves had persisted, despite compliance with her prescribed medication regimen. A few months later, plaintiff called Dr. Colligan to inform him that she was feeling better and that "the problem was milk products."

Due to an unpaid balance owed to Dr. Colligan, and new insurance coverage, plaintiff sought the services of another doctor the following year. On December 7, 1993, she met with Dr. Eugene Loftin, complaining that her hiatal hernia was acting up. Once again, her symptoms were nausea, vomiting, and stomach pain. Dr. Loftin narrowed his diagnosis to either gastroesophageal reflux disease (GERD) or pancreatic inflammation. He prescribed Reglan and Pepacid and ordered more tests. A week later, at plaintiff's behest, Dr. Loftin wrote a note stating that plaintiff was under his care for "'severe stomach pain' but may continue to work her usual job." After missing her next two scheduled appointments, plaintiff did not see Dr. Loftin again until May 1995, when he refilled her Zantac prescription. A year later, in April 1996, she contacted Dr. Loftin's office to get another refill of her prescription. When informed that she would first have to return for an office visit, she became upset, explaining that she could not afford a visit given that both she and her husband were out of work.

Instead of making an appointment with Dr. Loftin, plaintiff returned to Dr. Colligan. In his notes from plaintiff's July 17, 1996 appointment, Dr. Colligan noted that he had previously seen plaintiff for "chronic dyspepsia" and that her prior esophagogastroduodenoscopy revealed a hiatal hernia and erosive gastritis. Plaintiff informed Dr. Colligan that Dr. Loftin had prescribed Zantac, which was working. She reported that she

had been off work for three years and felt as well as she ever had, experiencing only minimal dyspepsia, occasional episodes of nausea and dry heaves. Dr. Colligan's examination revealed that plaintiff's abdomen was soft and non-tender with no masses. He continued her on Zantac and Reglan and scheduled a follow-up appointment for six months later.

In September 1996, plaintiff filed for disability benefits. The next month, Dr. Colligan completed a form sent by the Bureau of Disability Determination Services as part of its inquiry into plaintiff's eligibility for benefits under the Social Security Act. Dr. Colligan wrote that plaintiff's current diagnosis was duodenitis and hiatal hernia. He stated that her endoscopy found erosive gastritis and a hiatal hernia. He reported that she had not lost weight and had no other impairments or conditions. In response to the request that he describe plaintiff's ability to perform a variety of work-related activities, Dr. Colligan wrote, "Employment-related stress cause G.I. symptoms to become intolerable according to patient. She should not bend over or lift objects greater than 20# because of hiatal hernia." Plaintiff returned to Dr. Colligan on January 6, 1997, for a physical examination. In a general medical report requested by the SSA, and under the heading "Physical Findings," Dr. Colligan reported that plaintiff had GERD and a hiatal hernia. He advised that she continue medical management of these conditions.

After plaintiff's disability claim was denied, she received a requested hearing before the ALJ on March 3, 1998. Plaintiff, the only witness who testified, recounted her employment history, including her last position as a bank teller. She explained that she was fired from her last job due to her absences and breaks resulting from the symptoms of her condition. Her employer did not believe plaintiff was suffering from conditions beyond her control. Though

plaintiff had not been employed since 1993, she had volunteered a few days a month at her daughter's school. She testified that since she stopped working "her system has just calmed down." And, while she still experienced symptoms, she was able to control them to a degree. She stated that before being fired, she had attempted to reduce her symptoms by changing her job responsibilities and rearranging her schedule, but that these efforts had no effect.

Plaintiff reported that Dr. Colligan directed her to avoid both physical and mental stress to control her vomiting and nausea. She explained that she took both Reglan and Zantac on an as-needed basis, though she tried not to take more than two Reglan per day, given their tranquilizing effect. Plaintiff described her bouts of diarrhea and chest pain. She stated her weight had fluctuated over the years and that two years earlier she was 30 to 35 pounds heavier. Though doctors had told her to quit smoking, she still smoked a half-pack to a pack of cigarettes per day. Three months after the hearing, on June 2, 1998, the ALJ issued a decision finding that plaintiff was not disabled.

Additional medical evidence was added to the administrative record following the Seventh Circuit's remand to the SSA. In February 1999, plaintiff was examined by Dr. Loren White at Northwest Gastroenterologists. The assessment on her examination form included GERD, hiatal hernia, motility disorder, irritable bowel syndrome, and first term pregnancy. A test revealed an abnormal presence of heliobacter pylori in her stomach. On May 26, 1999, when plaintiff returned to Northwest Gastroenterologists, the doctor noted that she was "still having reflux." Plaintiff cancelled two other appointments in 1999, but continued to see Dr. White through 2002. On a form dated September 28, 2000, Dr. White diagnosed plaintiff with esophagitis and nausea with vomiting. In October 2000, she underwent an

esophagogastroduodennoscopy, a biopsy, and a clotest, due to the abdominal pain and nausea she was experiencing. Following the tests, Dr. White diagnosed: grade I-II esophagitis with small erosions, moderate proximal gastritis, duodenal erosion, antral erosion, and chronic duodenitis. Despite continuing treatment with various medication, which proved effective, plaintiff did experience recurring abdominal pain, nauseau, and bowel irregularity in 2001 and 2002. An upper gastrointestinal and small bowel study performed on plaintiff in November 2001 found no abnormalities.

The ALJ held a second hearing in plaintiff's case in November 2002, after the remand. This time, in addition to plaintiff, Dr. Walter Miller, a medical expert, and James Breen, a vocational expert, testified. Though plaintiff's testimony was not as extensive as during the first hearing, the ALJ and her attorney posed a few questions. When asked why she had not sought new employment since 1993, plaintiff asserted that she could not keep a job because her vomiting, diarrhea and nausea caused her to take frequent breaks and kept her from being able to serve customers. She stated that her current medical treatment included taking Reglan and Zantac daily. Plaintiff was also taking Effexor for depression. At the time of the hearing, she smoked about a pack of cigarettes a day.

The next witness at the hearing was Dr. Miller, who had reviewed plaintiff's medical documents and her testimony from the previous hearing. When asked whether the record established that plaintiff had any physical impairments, Dr. Miller replied that he did not think so because her condition did not compare with the impairments of the digestive system listed in the Social Security Regulations, 20 C.F.R. § 404, subpt. P, app. 1. According to Dr. Miller, plaintiff's tests revealed no more than gastric erosion and duodenal erosions. He

pointed out that she had not been diagnosed with ulcerative colitis, Crohn's disease, or regional enteritis. While Dr. Miller acknowledged plaintiff's symptoms, he found that they persisted "without any basis, anatomical, pathological basis" and that she had "received symptomatic treatment all these years without any actual physical pathological diagnosis." When asked again whether plaintiff had any impairments, Dr. Miller replied, "Not according to the list of impairments, no." Addressing limitations that plaintiff might experience, the doctor found that she could occasionally perform light lifting, up to twenty pounds, and could frequently lift ten pounds. He found no evidence of limitations with regards to standing, walking, sitting, balancing, or bending. Dr. Miller testified that the record provided no explanation for plaintiff's frequent bathroom breaks. As he stated, "[H]er symptoms cause her to not remain in one position a long time, but it's hard to substantiate exactly why. I have to say that the record doesn't support that." He went on to say that her other symptoms – vomiting, diarrhea, and cramps – are explained in the record only by "irritability," and "irritability is not a diagnosis."

Under examination by plaintiff's attorney, Dr. Miller stated that Dr. Colligan's records reveal a diagnosis of "gastritis," or inflammatory findings in the lining of the stomach that cause symptoms. Dr. Miller admitted that one can have chronic gastritis, but insisted that it does not meet the criteria for a listed disability. He also identified GERD and duodenitis as inflammations which cause vomiting, nausea, and pain. Dr. Miller stated, "[Plaintiff] has these things, but I don't know if it's reasonable to say that she's got a permanent disability from that." At plaintiff's attorney's request, Dr. Miller also defined dyspepsia, difficulty in the secretion of pepsin which disrupts digestion, and hiatal hernia, a pouch of the stomach above

the diaphragm that collects acid and causes burning. The doctor found that the results of plaintiff's scopes did not indicate the presence of pre-cancerous changes in a hiatal hernia, but he did not deny that there was at least a small hiatal hernia. He did affirm that emotional or mental stress could worsen the symptoms of duodenitis and GERD.

The final witness at the hearing was James Breen, a vocational expert who reviewed plaintiff's work history records. Breen found that most of plaintiff's past work experience was semi-skilled and involved sedentary or light exertional work. He then provided the number of jobs in the Chicago metropolitan area for various occupations that plaintiff had previously held. While recognizing that standards vary, Breen stated that most employers would only allow an employee to take two days of leave per month, one sick day and one personal day. Before being allowed these days off, an employee would need to get through a three-month probationary period. Once an employee's probation ended, she could not exceed her yearly limit of sick days. Breen testified that he did not believe most employers would allow an unscheduled 30-minute break, three days a week, to deal with symptoms of gastro-intestinal distress. Finally, Breen stated that while it would be more difficult for someone with plaintiff's work history to find work, it was not impossible. On April 25, 2003, the ALJ issued his second decision on plaintiff's disability application, once again concluding that she was not disabled.

## DISCUSSION

The ALJ's decision must be supported by substantial evidence and be free of legal error. 42 U.S.C. § 405(g). The substantial evidence standard requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" – a "mere scintilla of proof" is not enough. Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995). When conducting its

review, the court does not reconsider the facts, re-weigh the evidence or resolve factual disputes. Scott v. Barnhart, 297 F.3d 589 (7th Cir. 2002). Legal errors by the ALJ may make it impossible to conduct a meaningful review of the decision, as the Seventh Circuit found was the case with the ALJ's prior ruling on plaintiff's disability. Unless the ALJ's opinion lacks substantial evidence or contains legal errors precluding meaningful review, we cannot reverse or remand the opinion even if, in weighing the evidence, we would reach a different outcome.

The ALJ evaluated plaintiff's disability claim, using the five-step analysis mandated by 20 C.F.R. § 404.1520. First, he determined that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of her disability. Then, he found that she suffers from severe gastrointestinal disorders. The third step required him to consider whether the severity of plaintiff's impairments equaled one of the SSA's listed impairments. He found that her impairment did not meet a listing. That did not end the inquiry, however, because plaintiff could still be found disabled under the remaining steps. For the fourth step, the ALJ assessed plaintiff's residual functional capacity and the requirements of her past work. He found that her functional capacities allowed her to perform the light work requirements of her prior job as a bank teller. Therefore, he concluded that she was not disabled.

Plaintiff argues that the ALJ made several mistakes during the fourth step of his evaluation, making it impossible to conduct a meaningful review. She alleges that the ALJ failed to sufficiently analyze plaintiff's residual functional capacity, incorrectly required objective evidence to establish the severity of plaintiff's symptoms, and did not give proper weight to the opinions of plaintiff's treating physicians. We shall address each of these arguments in turn.

Social Security Ruling 96-8p explains the SSA's policy regarding the assessment of a claimant's residual functional capacity (RFC). It requires that the RFC assessment "first identify the individual's limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," and then afterwards express the capacity in terms of the "exertional levels of work, sedentary, light, medium, heavy, very heavy." Defendant acknowledges that the ALJ did not list his findings of plaintiff's ability to perform work-related tasks on a function-by-function basis. Nonetheless, defendant contends that the ALJ questioned Dr. Miller about plaintiff's ability to perform a variety of tasks, showing that he considered plaintiff's individual capacities, which is all that is required by Ruling 96-8p. The ruling, however, calls for more than just evidence of the ALJ's consideration of plaintiff's ability to perform individual functions – it calls for an explanation of his decision. Under "Policy Interpretation," the ruling reads, "At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories . . . because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it."

The ALJ did provide some written consideration of plaintiff's ability to perform her past relevant work; he did not simply conclude that plaintiff could perform a full range of light work. He recited Dr. Miller's opinion that plaintiff has no limitation on her ability to stand, walk, sit, push, pull, and climb stairs, and that she can lift up to 20 pounds occasionally. He also addressed plaintiff's ability to bend. In its review of the ALJ's first opinion, the Seventh Circuit highlighted his failure to consider Dr. Colligan's assessment that plaintiff could not bend. In his second opinion, the ALJ does not make the same mistake. He stated that Dr.

Miller reviewed all the medical records and found no basis for a limitation on plaintiff's bending. Faced with conflicting opinions from Dr. Miller and Dr. Colligan, the ALJ gave more weight to Dr. Miller's assessment.[1]

Though the ALJ did discuss plaintiff's exertional limitations, his opinion falters in the consideration of her non-exertional limitations. In cases in which symptoms such as pain are alleged, Ruling 96-8p requires the ALJ's assessment to

> * Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;
> * Include a resolution of any inconsistencies in the evidence as a whole; and
> * Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.

Plaintiff has testified and argues in her brief that her gastrointestinal impairment causes symptoms, such as nausea, vomiting, abdominal pain, and alternating diarrhea and constipation, that often force her to take unscheduled breaks and miss days of work, a result that employers find unacceptable. In support of this contention she highlights her own statements, her employment history, and the vocational expert's testimony regarding a typical employer's tolerance of unscheduled breaks and absenteeism. Plaintiff recognizes that the opinion does mention her symptoms, but argues that the ALJ failed to explain how her symptoms affected the RFC assessment.

Plaintiff's complaints to her treating physicians and the SSA constitute the bulk of the evidence regarding her symptoms. The ALJ considered the evidence of plaintiff's symptoms in light of all the other evidence of disability, including the objective medical evidence. He

---

[1] In her third and final argument, plaintiff challenges the ALJ's decision to give more weight to Dr. Miller's opinion than the opinions of her treating physicians. We reserve our discussion of the issue for later in this memorandum and opinion.

provided a number of reasons why he found plaintiff's assertions regarding the frequency and severity of her symptoms to be exaggerated. He noted that despite plaintiff's claims that her symptoms had precluded her from working since 1993, she had never been hospitalized or treated in an emergency room for her condition since that time; her treating physicians had reported that her medications helped to control her symptoms; she had acknowledged improvement and attributed her problems to dairy products; and at times she had treated her symptoms only with over-the-counter medications. The ALJ also found that the record did not support plaintiff's contention that her diarrhea caused her weight to fluctuate. He determined that the weight fluctuations plaintiff experienced between 1992 and 2002 were explained, at least in part, by dieting, as evidenced by Dr. Colligan's notes from July 1992 and July 1996, which state that plaintiff lost 18 pounds intentionally, after using "Slim Fast," and she lost 40 pounds and "kept it off."

The ALJ also reviewed plaintiff's symptoms in light of the objective medical evidence. He noted that over the years she had been diagnosed with GERD, duodenitis, gastritis, gastric erosion, and a hiatal hernia. He discussed plaintiff's August 1992 biopsy, which revealed erosive gastritis and a small hiatal hernia. Given that plaintiff reported her condition was the same at her second hearing as it was during her first hearing, the ALJ also reviewed a biopsy from October 2000, that revealed "mild reflux esophagitis and slight superficial gastritis." Upper and lower gastrointestinal studies from November 2001, found no abnormalities.

After reviewing all of this evidence, the ALJ found that "claimant does have some medically determinable basis for her complaints, however the nature of the objective findings reveals that her complaints have been out of proportion to the objective clinical findings as

discussed above." Finding that plaintiff's complaints regarding the severity of her symptoms are not credible, given all the evidence on record, does not answer the question whether plaintiff's symptoms preclude her from employment. Nonetheless, the ALJ jumps from this finding to the conclusion that plaintiff can perform the tasks of her former employment. In reaching his conclusion, the ALJ never determines how much plaintiff has exaggerated her complaints. He indicates that there is some basis for her symptoms, but never explains how severe her symptoms are, given the record. Does she suffer from regular bouts of vomiting, nausea, and diarrhea? If so, how frequently? Often enough to cause her to take two sick days a month or three unscheduled breaks a week?

In reciting Dr. Miller's testimony, the ALJ states that the medical expert found no basis or diagnosis for plaintiff's complaint that she needed to go to the bathroom frequently. It does not appear that the ALJ accepted this finding in reaching his own conclusion because his opinion indicates that there is some evidence for the symptoms that forced plaintiff to retreat to the bathroom at her workplace. Yet, he makes no findings regarding the severity of these non-exertional limitations, how often these limitations would interfere with her work, nor how that interference would affect her employability. He only finds that plaintiff's symptoms are not as severe as she maintains and therefore concludes that they do not impede her from working. His conclusion does not follow from his finding. To conclude that plaintiff can perform her prior work, he must determine the severity and frequency of her symptoms. Vague findings that plaintiff has symptoms, but they are not as bad as she contends, are insufficient to satisfy the inquiry into non-exertional limitations.

In her second argument, plaintiff maintains that the ALJ improperly rejected her claims

regarding the severity of her symptoms on the basis of a lack of objective evidence. She cites Social Security Ruling 96-7p, which states, "An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *See also* 20 C.F.R. § 404.1529(c)(2). The ALJ did not completely disregard plaintiff's assertions regarding the intensity and persistence of her symptoms. As explained above, the ALJ considered her statements in light of the rest of the evidence. However, the evidence upon which he relied included testimony by Dr. Miller that was erroneous and contradictory.

Plaintiff contends that Dr. Miller's testimony reveals a misconception regarding the assessment of a disabling impairment. Twice, when asked whether plaintiff had any physical impairments, Dr. Miller responded that she did not have an impairment that matched or equaled one from the SSA's list of impairments. Plaintiff is correct that an impairment need not meet or be related to a listed impairment in order to be disabling, and that Dr. Miller's testimony does not indicate an understanding of this concept. However, the ALJ's ruling in no way relied on the doctor's misconception. If the ALJ adopted the belief that an impairment needed to be listed in order to be disabling, then he would not have continued his analysis after finding that plaintiff's condition did not meet a listing.

The ALJ did appear to rely, however, on Dr. Miller's testimony that "the record basically is not containing a consistent diagnosis of anything," and that plaintiff's doctors were treating her symptomatically. The inaccuracy of Dr. Miller's testimony is revealed by the ALJ's own opinion, which nonetheless appears to give credence to Dr. Miller's statement. The

ALJ wrote, "[T]he claimant has been diagnosed by her treating physicians has [sic] having doudenitis [sic], a hiatal hernia, gastrointestinal reflux and gastritis erosion. As the testimony of Dr. Miller showed, the claimant does not have any definitive gastrointestinal diagnosis." Neither Dr. Miller nor the ALJ explain why conditions and diseases identified by plaintiff's treating physicians do not qualify as gastrointestinal diagnoses. The fact that the record does not support a diagnosis of ulcers, ulcerative colitis, Crohn's disease or regional enteritis, does not mean that there is no evidence of a diagnosis. Though Dr. Miller testified that the medical tests in plaintiff's record revealed no disease of the esophagus, stomach, duodenum, small bowel, or colon, he later stated under examination by plaintiff's attorney that she was impaired by gastritis. When asked about GERD, duodenitis, and their symptoms, Dr. Miller contradicts his statement that there is no evidence of a diagnosis, stating, "[S]he has these things, but I don't know if it's reasonable to say that she's got a permanent disability from that." Given the record, Dr. Miller's statement that there was no evidence of a diagnosis for plaintiff was clearly wrong. Dr. Miller, himself, even contradicts it. Yet, the ALJ appeared to rely on the doctor's assessment when deciding to discount plaintiff's testimony regarding her symptoms.

Plaintiff's final argument is that the ALJ failed to give proper weight to the opinions of her treating physicians. She asserts that the ALJ was presented with conflicting medical opinions from Dr. Miller, who concluded that she could perform light work despite her condition and her treating physicians, who believed she suffered from additional limitations and could not work. Plaintiff maintains that when presented with conflicting medical opinions, the ALJ must defer to the opinions of the treating physician, even if his opinions are not entitled to controlling weight. As discussed above, the ALJ placed more weight on the opinion of Dr.

Miller, who never examined plaintiff.

When weighing medical opinions, the ALJ considers the following factors: 1) the examining relationship of the expert to the claimant; 2) the length and nature of the treatment relationship; 3) the relevant evidence provided to support the opinion; 4) the consistency of the opinion with the overall record; 5) the specialization of the expert; and 6) any other factors provided that may affect the weight of an opinion. 20 C.F.R. § 404.1527(d). Generally, as the first and second factors indicate, the opinion of a treating physician will be given more weight than that of a physician who only reviews her medical records. Nonetheless, when medical opinions are inconsistent, the ALJ looks to all the evidence to make a decision regarding disability. 20 C.F.R. § 404.1527(c). The ALJ found that Dr. Miller's opinion "was supported by the record as a whole" and Dr. Colligan's opinion was not substantiated by the evidence. He did not analyze the relevant factors before reaching the decision to favor Dr. Miller's opinion. Given that Dr. Miller never examined the plaintiff, made statements inconsistent with the record, and contradicted himself, the ALJ needs to provide a more detailed explanation as to why the medical expert's opinion deserves more weight than that of the plaintiff's treating physicians.

ALJ Horn found that plaintiff suffered from a severe impairment as a result of her gastrointestinal conditions, but he concluded that this impairment did not preclude her from performing her past work as a bank teller. In reaching this decision he failed to determine the severity and frequency of her symptoms and how they affect her employability; he relied on testimony of Dr. Miller, which was inconsistent with the record and the expert's own testimony; and he granted more weight to the testimony of a non-treating physician over a treating

physician, without sufficient explanation.

Due to these errors, we reverse the ALJ's decision. Plaintiff seeks an award of benefits from the court, arguing that such a remedy is appropriate when there is evidence of obduracy on the part of the SSA. An outright award of benefits by the court is appropriate where the record allows for only one reasonable conclusion – that the plaintiff is disabled. *See* Campbell v. Shalala, 988 F.2d 741, 744 (7th Cir. 1993). Such is not the case here. The Seventh Circuit has also granted an outright award of benefits after reversing an ALJ's second opinion denying a claim for benefits, where the ALJ clearly ignored the court's grounds for its original reversal and remand. Wilder v. Apfel, 153 F.3d 799 (7th Cir. 1998). In ALJ Horn's second opinion denying Spaulding benefits, he does attempt to address the errors listed in the Seventh Circuit's opinion reversing his original decision. His opinion does not reveal the obstinance of the ALJ's opinion in Wilder; rather, it shows a concern for the issues raised by the Seventh Circuit. However, as we have explained, there are new errors that preclude meaningful review of the ALJ's second decision. Therefore, we remand the case for further proceedings to address the issues we have raised.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is denied and plaintiff's motion is granted. The case is remanded to the SSA for further proceedings.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 12, 2004.